IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FREDERICK RIVERS, | : | CIVIL ACTION |
| | : | NO. 10-4211 |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| RAYMOND LAWLER, et al., | : | |
| | : | |
| Respondents. | : | |

FILED

MAR 25 2011

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## O R D E R

**AND NOW**, this **24th** day of **March, 2011**, upon a de novo review[1] of Magistrate Judge Elizabeth T. Hey's Report and Recommendation (doc. no. 8), and Petitioner's Objections thereto (doc. no. 12) it is hereby **ORDERED** that:

1. The Report and Recommendation (doc. no. 8) is **ADOPTED** and **APPROVED**;[2]

---

[1] Section 636 of Title 28 of the U.S. Code governs the jurisdiction, power, and temporary assignments of United States Magistrate Judges. Subsection (b)(1) provides:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1).

[2] Rivers raises one objection to Judge Hey's findings. Rivers claims that his actual innocence overcomes any procedural default; therefore, his petition should be granted. "[T]here is a narrow class of cases in which, in order to avoid a fundamental

miscarriage of justice, evidence of a petitioner's actual innocence can excuse his failure to exhaust his state court remedies." Houck v. Stickman, et al., 625 F.3d 88, 93 (3d Cir. 2010) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)). A case in which a petitioner attempts to overcome a procedural default by advancing a claim of actual innocence is called a "gateway" case. Id.

> In an actual innocence gateway case a petitioner must demonstrate two things before his procedural default will be excused. First, a petitioner must present new, reliable evidence that was not presented at trial. Second, a petitioner must show by a preponderance of the evidence, "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."

Id. (quoting Schlup v. Delo, 513 U.S. 298, 324, 327 (1995)). The Supreme Court has stated that by "new evidence" it means "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." Schlup, 513 U.S. at 324.

Here, Petitioner's newly discovered evidence consists of an affidavit penned by his co-defendant, Carl Miller ("Miller"). The affidavit states that Miller is sure that Petitioner was not present at the crime scene when the crime occurred. Petitioner argues that given this new evidence, it is probable that no reasonable juror would have convicted him. Additionally, in his objections, Petitioner emphasizes that no witness actually saw the man who committed the crime and identified Petitioner as that party. Petitioner is arguing that there is a miscarriage of justice because his guilt is based on circumstantial evidence.

In the first place, guilt beyond a reasonable doubt can be established by circumstantial evidence. Desert Palace, Inc. v. Costa, 539 U.S. 90, 91 (2003) ("This Court has . . . never questioned [circumstantial evidence's] adequacy in criminal cases, even though proof beyond a reasonable doubt is required."). Secondly, the only new evidence Petitioner provides is an affidavit. Affidavits alone are not a promising way to demonstrate actual innocence. Though sworn, they are not convincing evidence of innocence because "the affiants' statements are obtained without the benefit of cross-examination

and an opportunity to make credibility determinations." Herrera v. Collins, 506 U.S. 390, 417 (1993). In addition to the inherent weakness of an affidavit, this affidavit is unhelpful because Miller admits that "[he] did not see the actual crimes take place, nor [does he] know who committed those crimes. . . ." The only part of the affidavit which is helpful is that Miller states that he is sure Petitioner was not "present at the scene when the crime was committed." This evidence does not establish actual innocence; at most, it establishes that Petitioner's co-defendant did not see Petitioner at the club.

This equivocal and unreliable affidavit is all the more unconvincing when measured against the substantial evidence of Petitioner's guilt. Three witnesses recognized Petitioner as the man with co-defendant Miller on the morning of the shooting. Barbara Grady, who was collecting the cover fee at the door of the Jolly 6 on the morning of the shooting, thought she recognized Petitioner, in-court, as co-defendant Miller's companion. (N.T. 5/5/92 at pp. 166-67.) Additionally, shortly after the shooting, Barbara Grady picked Petitioner's photo out of a line-up and provided in-court identification of Petitioner as the man who looked like the photo she picked in the line-up. (N.T. 5/5/92 at pp. 201-02.) Additionally, shortly after the incident, a bartender at the Jolly 6, Richard Vicky Laws, identified Petitioner as the male she saw with co-defendant Miller on the morning of the shooting. (N.T. 5/7/92 at pp. 472-73.) Richard Vicky Laws provided an in-court identification of Petitioner as the man she saw with co-defendant Miller on the morning of the shooting. (N.T. 5/7/92 at pp. 466-67.) Finally, Robert Goode, the inside doorman at the Jolly 6, identified Miller and Petitioner in a photo identification line-up. (N.T. 5/8/02 at pp. 608.)

In the face of this evidence, no reasonable juror would refuse to convict Petitioner simply because his co-defendant, who was dismissed from the case, avers that Petitioner was not at the crime scene at the time of the crime when, in fact, co-defendant Miller also admits that he did not see the crime. The new evidence does not warrant invocation of the fundamental miscarriage of justice exception to the procedural default doctrine and cannot support a claim of actual innocence.

2. Petitioner's Objections (doc. no. 12) are **OVERRULED**; and

3. Petitioner's § 2254 habeas petition (doc. no. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability[3] shall not issue and that this case shall be marked **CLOSED**.

**AND IT IS SO ORDERED.**

_____
**EDUARDO C. ROBRENO, J.**

---

[3] A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Petitioner has not made the requisite showing in these circumstances.